IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 24, 2019

## STATE OF TENNESSEE v. RAD MANDELA KELLAR

**Appeal from the Criminal Court for Hamilton County**
**No. 301458     Thomas C. Greenholtz, Judge**

_____

### No. E2018-00313-CCA-R3-CD

_____

The Defendant, Rad Mandela Kellar, appeals as of right from the Hamilton County Criminal Court's denial of his request for judicial diversion. The Defendant pled guilty to possession of not less than ten pounds, one gram of marijuana nor more than seventy pounds of marijuana with intent to sell, and he was sentenced to two years of unsupervised probation. On appeal, the Defendant contends that the trial court abused its discretion by denying judicial diversion. Discerning no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Joshua P.Weiss, Chattanooga, Tennessee, for the appellant, Rad Mandela Kellar.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Assistant Attorney General; M. Neal Pinkston, District Attorney General; and Kevin Taylor Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

#### FACTUAL BACKGROUND

On March 29, 2017, the Defendant was indicted for possession of not less than ten pounds, one gram of marijuana nor more than seventy pounds of marijuana with intent to sell. See Tenn. Code Ann. § 39-17-417. The Defendant pled guilty as charged on January 31, 2018, and received a two-year sentence. The plea agreement provided that the trial court would determine whether to grant judicial diversion. The following facts

were adduced at the Defendant's guilty plea and sentencing hearing held on the same day.

The Defendant acknowledged that he was voluntarily entering a guilty plea for the charged offense. The Defendant denied being under the influence of alcohol or any type of medication. The Defendant affirmed that he had reviewed a copy of the guilty plea agreement, that he had discussed the nature of his plea with his attorney, and that he was satisfied with his attorney's representation. He said that he had read the agreement and confirmed his signature was on the document. The Defendant stated that he understood the agreement and said that he did not have any questions for the court. The Defendant agreed that he understood the constitutional rights he was forfeiting by entering a guilty plea and said that he knew his potential sentence.

The prosecutor stated that had the Defendant's case proceeded to trial, the facts would have shown the following:

> [O]n January 16, 2017, a Captain Jones with the Dooly County sheriff's office, Dooly County, Georgia, made a traffic stop on I-75 of a rental vehicle. That vehicle was driven by [the Defendant]. As Captain Jones approached the vehicle he smelled marijuana. He searched the vehicle . . . [and] located approximately one pound of marijuana.

The prosecutor explained that the pound of marijuana was not subject to the Defendant's charge in Tennessee but was part of a pending case against the Defendant in Georgia. The prosecutor continued and said that Captain Jones also located "a log, cash money, vacuum sealer, box and boxes of vacuum seal bags" in the Defendant's vehicle. Captain Jones "recognized the vacuum seal and bags [as] consistent with the packaging and transportation of marijuana."

Captain Jones also found documentation indicating that the Defendant had rented a storage facility in Hamilton County, Tennessee. After arresting the Defendant and seizing the evidence, Captain Jones contacted Chattanooga police. A Chattanooga investigator obtained a search warrant for the storage facility and found a container with 18.7 pounds of marijuana. The investigator also located "two other [empty] containers which appeared to [have] the same type of packaging and shipping" as the container in which the 18.7 pounds of marijuana was found.

After entering his guilty plea and before the trial court determined whether to grant judicial diversion, the Defendant made the following statement:

> I would just like to apologize to the courts for any inconvenience that I've caused. And this has been the biggest mistake I've ever made in

my life. And I am definitely never going to be doing anything like this ever again. And I would hope to pursue a career in the airline industry because that's where I – I graduated from college, that was my degree was geared towards that. And so my hope is to pursue a career in the airline industry and I believe that a felony would essentially close the door to any opportunity in that nature.

So I'm hoping that I'll be able to not have a permanent felony on my record.

Angelina Larue testified that the Defendant was her older brother. When asked to describe the Defendant's character she stated,

He is a very hardworking, loyal, caring person. He's very determined. He works hard. He studied very hard in school. He is kind. He has two young children that he looks after and is very loving and caring towards them. And he tries to just be the best father he can be.

Ms. Larue explained that the Defendant had never had any issues with violence and that he took "responsibility for all his actions." She further described him as "honest and upfront."

Ms. Larue said that the Defendant possessed a Bachelor of Science degree in aeronautics. When asked to describe what the Defendant did to earn a living, Ms. Larue testified that the Defendant "own[ed] a small business[,]" was "a handyman[,]" and he did "small carpentry jobs" and "lawn work." She said that the business had a good reputation and that the Defendant did "the best he c[ould] for his kids."

Ms. Laure explained that the Defendant had two children, and she believed that he had full custody of the children. She testified that the Defendant was a great father and that he "ke[pt] them healthy and [was] encouraging to them."

Ms. Larue was not aware of any major criminal history associated with the Defendant, and she asserted that he did not have any type of juvenile record. Ms. Larue was confident that if the Defendant were placed on judicial diversion, he would be able to pay the related fine and court fees and that he would refrain from any type of criminal activity. Ms. Larue said that she and the rest of the Defendant's family fully understood the Defendant's conviction and asserted that, "as a family unit[,]" they would fully support the Defendant. Ms. Larue also denied that marijuana was a "major issue in the Defendant's life."

There was a stipulation of the factual basis for the Defendant's charge contained in the presentence report, which was entered as an exhibit. According to the stipulated facts, the Defendant was stopped by a police officer while driving on I-75 in Dooly County, Georgia. The officer detected a strong scent of marijuana emanating from the Defendant's vehicle and proceeded to search the vehicle. The following items were found during the search: approximately one pound of marijuana, approximately $1,000 in cash, "several prescription pills," and "a large vacuum sealer and several boxes of sealer bags." The officer also found a log detailing "multiple drug deliveries while traveling the south east and paperwork showing where [the Defendant] ha[d] rented storage space."

One of the storage spaces was located in Chattanooga, Tennessee, and the Defendant was found to be in possession of a key to that storage unit. Further investigation revealed that the Defendant had mailed himself two forty-pound packages from California to Chattanooga. On January 11, 2017, the Defendant flew from California to Atlanta, Georgia, rented a vehicle, and then drove to Chattanooga. There, the Defendant rented the previously discussed storage unit and he took possession of the shipped packages. The Defendant then drove the rental vehicle to Miami, Florida, and returned to "Tennessee while making delivery stops along the way." The Defendant claimed that he had been on vacation, but when an officer confronted him with the rental agreement for the storage unit in Chattanooga, the Defendant snatched the paper out of the officer's hand and consumed it. Based on the Defendant's action, the officers suspected that additional contraband might be present in the Chattanooga facility. A search warrant was issued for the storage unit, and "18.7 pounds of high grade marijuana[,]" along with two containers previously mailed from California, were found inside.

In determining whether to grant judicial diversion, the trial court determined that the Defendant's social history weighed heavily in favor of diversion based on his "positive educational attainment" and "active family support." The trial court also reasoned that "the interest of the [D]efendant weigh[ed] strongly in favor of diversion" because it was likely "a felony conviction w[ould] impair his ability to obtain meaningful employment" in the field of aeronautics. The court also determined that the Defendant was amenable to correction and remorseful regarding his actions.

The trial court determined that the circumstances of the Defendant's offense weighed heavily against diversion. The trial court reasoned that the Defendant's crime involved "planned activity." The trial court stated that the Defendant's actions were "indicative of a well-thought, if not executed, plan to systemically violate the law of" Tennessee. The trial court found that this was not a "one-time occurrence[,]" but rather "part of a pattern of conduct[.]" The court reasoned that there were

[t]wo separate deliveries to a residence in [Chattanooga] in Hamilton County of 40 pounds of marijuana, along with a simultaneous discovery . . . of at least another 18 and a half pounds of marijuana in a storage locker in Hamilton County. . . . [I]t is crystal clear that this was not a one-off occurrence, that it was a systemic plan to violate the laws of the [S]tate of Tennessee.

The court also found that the Defendant's interference with the investigation, by consuming the Chattanooga storage rental agreement, weighed moderately against diversion. The court considered that the criminal conduct was a means of support for the Defendant and concluded this weighed against diversion. The court also determined that "deterrence value" and "whether judicial diversion will serve the interest" of the public were factors that weighed against diversion. The court found that the interest of the public weighed against diversion "moderately[.]" The trial court reasoned that people were more likely to be deterred from the "purposeful engagement in the drug trade, systemically[,] by the additional presence of a conviction." The trial court found that the Defendant's record of minor criminal activity weighed moderately against diversion. The trial court considered the Defendant's positive physical and mental health as a neutral factor.

The trial court then restated the weight it was assigning each of the seven factors and denied diversion. The trial court sentenced the Defendant to two years of unsupervised probation. The Defendant now appeals, challenging only the denial of judicial diversion.

ANALYSIS

According to the Defendant, the trial court abused its discretion in denying judicial diversion after weighing the evidence and relevant factors. Specifically, the Defendant argues that: (1) his "amenability to correction is great and weighs heavily in favor of receiving judicial diversion"; (2) the circumstances of his offense "should not weigh against diversion, but should be neutral"; (3) he does not have a significant criminal history; (4) he "is in good physical and mental health," and this factor should weigh in favor of judicial diversion; (5) "[a]fter enduring the gauntlet of the criminal justice process in both Tennessee and Georgia, the denial of judicial diversion does not have any meaningful deterrent value to the Defendant or others"; and (6) "denying the Defendant judicial diversion does not serve the ends of justice or the interests of the public." The State responds that the trial court properly exercised its discretion in denying judicial diversion. We agree with the State.

-5-

Here, the Defendant was eligible for judicial diversion. See Tenn. Code Ann. § 40-35-313(a)(1)(B). However, simply because a defendant meets the eligibility requirements does not automatically entitle him or her to judicial diversion. State v. Bonestal, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993). "Traditionally, the grant or denial of judicial diversion has been left to the sound discretion of the trial court." State v. King, 432 S.W.3d 316, 323 (Tenn. 2014). When deciding whether judicial diversion is appropriate, a sentencing court must consider seven common-law factors in making its determination. Those factors are:

> (a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the accused's physical and mental health, and (f) the deterrence value to the accused as well as to others. The trial court should also consider whether judicial diversion will serve the ends of justice—the interests of the public as well as the accused.

State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998) (citing State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996)); see also King, 432 S.W.3d at 326 (reaffirming that the Electroplating requirements "are essential considerations for judicial diversion"). The trial court must weigh the factors against each other and explain its ruling on the record. King, 432 S.W.3d at 326 (citing Electroplating, 990 S.W.2d at 229). If the trial court adhered to these requirements, "the determination should be given a presumption of reasonableness on appeal and reviewed for an abuse of discretion." Id. at 319. This court will "not revisit the issue if the record contain[ed] any substantial evidence supporting the trial court's decision." Electroplating, 990 S.W.2d at 229; see also Parker, 932 S.W.2d at 958.

A trial court is "not required to recite all of the Parker and Electroplating factors when justifying its decision on the record in order to obtain the presumption of reasonableness." King, 432 S.W.3d at 327. However, "the record should reflect that the trial court considered the Parker and Electroplating factors in rendering its decision and that it identified the specific factors applicable to the case before it." Id. If the trial court "fails to consider and weigh the applicable common law factors, the presumption of reasonableness does not apply and the abuse of discretion standard . . . is not appropriate." Id. "In those instances, the appellate courts may either conduct a de novo review or . . . remand the issue for reconsideration." Id. at 328.

Here, the trial court extensively considered all of the Parker and Electroplating factors and explained on the record which factors it relied upon in denying the Defendant's request for judicial diversion. Therefore, the trial court's decision is entitled

-6-

to the presumption of reasonableness, and this court must affirm that decision if there is any evidence to support it.  See King, 432 S.W.3d at 327.

We conclude that there was substantial evidence supporting the trial court's denial of the Defendant's request for judicial diversion.  Despite the Defendant's positive social history and family support, the circumstances of the offense are particularly troubling, and the trial court did not err in weighing that factor heavily against diversion.  Furthermore, we believe that given the extent of the Defendant's criminal behavior, a criminal conviction is more likely to deter others from engaging in similar conduct.  The Defendant is not entitled to relief.

<u>CONCLUSION</u>

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE